# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3074

CLARENCE HAYES,

*Petitioner-Appellant,*

v.

DEIRDRE BATTAGLIA, **Warden,**
**Stateville Correctional Center,**

*Respondent-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 98 C 6813—**Joan B. Gottschall**, *Judge.*

———————

ARGUED JANUARY 12, 2005—DECIDED APRIL 13, 2005

———————

Before FLAUM, *Chief Judge*, and EASTERBROOK and WOOD,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In this collateral attack
under 28 U.S.C. §2254, Clarence Hayes, serving a life sen-
tence for murder, contends that his lawyer during the state
proceedings furnished ineffective assistance. He also con-
tends that the state courts made several errors that justify
relief. The district court held that the ineffective-assistance
claim had been defaulted when Hayes failed to present it to
the state's appellate courts, either on direct appeal or on

collateral review, that Hayes is not entitled to relief from that forfeiture, and that the other events of which he complains, if errors at all, were harmless. *Hayes v. Carter*, 2003 U.S. Dist. LEXIS 8650 (N.D. Ill. May 22, 2003).

After church one Sunday, Ronald and Marion Nelson, their son Roger, and Roger's fiancée Sandra Wissink walked across the street toward their cars, parked in the church's lot. They were intercepted by a man with a gun, who ordered all four into Ronald Nelson's car and robbed them of their valuables. Five minutes later Donna Van Zanten (the pastor's wife) and her son Kent emerged from the church and made for the parking lot. The robber set upon them too. After another five minutes or so the robber left—but not before shooting Ronald, who died from the wound. Four of the five survivors, who had seen the assailant in broad daylight at close quarters for between five and ten minutes, identified Hayes in a lineup and at trial. (Marion Nelson did not testify; the papers filed in this court do not reveal why.) As he left, the robber (still clutching the women's purses) encountered Larry Stewart and Harold Smith, who had heard the gunshot. The fleeing man said to them, as he passed, "You brothers, you be cool because you know them was honkies over there." Stewart and Smith, who heard Roger shout that the man on the run had just "shot my Dad," were not "cool"; they identified Hayes at a lineup and again at trial. That made six eyewitnesses—five, if one discounts for the fact that Smith did not pick Hayes out of a photo array until being coached by Stewart. The jury evidently found their testimony convincing.

Hayes says that his lawyer butchered the defense by failing to call as alibi witnesses six of Hayes's relatives who would have testified that he had been home watching a basketball game when the crime was committed. We don't know why the lawyer decided not to call these witnesses, because Hayes failed to develop this subject. He raised the subject in the circuit court on collateral review but did not

supply details (such as affidavits from his relatives and his former lawyer), and then did not mention it on appeal. Instead he argued that his post-conviction counsel in the circuit court had been ineffective (a contention now abandoned). That kind of procedural default blocks federal review; indeed, even if Hayes had presented the point to the appellate court it still would have been forfeited by omission from a request for review by the Supreme Court of Illinois. See *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

In his opening brief in this court, Hayes contended that *Massaro v. United States*, 538 U.S. 500 (2003), relieves him from that default. It does nothing of the kind. *Massaro* holds that a defendant in a federal criminal prosecution need not raise a claim of ineffective-assistance on direct appeal but always may reserve it for a collateral proceeding under 28 U.S.C. §2255. This is a rule of practice for federal judges in federal criminal cases and does not change the relation between state and federal courts. See *Gomez v. Jaimet*, 350 F.3d 673, 678 (7th Cir. 2003); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003). What is more, even if *Massaro* were to be applied to proceedings under §2254, it would not permit the defendant to omit the ineffective-assistance claim from *both* direct and collateral review in state court.

This case shows why. By withholding the contention from the state judiciary, Hayes not only deprived it of an opportunity to address the claim (and repair any problem) but also left us with an essentially empty record. We have his allegations but none of the details from the potential witnesses and from his former lawyer that could have put these allegations to the test. Because the shortfall is Hayes's fault, he could not receive a federal evidentiary hearing under 28 U.S.C. §2254(e). For all we can tell, Hayes asked his trial lawyer not to call the alibi witnesses. Or maybe after interviewing the witnesses counsel concluded that the jurors would see through a story that evinced family solidarity but lacked the ring of truth. Cf. *Nix v. Whiteside*,

475 U.S. 157 (1986) (sixth amendment does not require counsel to present false exculpatory testimony). Maybe a full record would vindicate Hayes's position that counsel was sleepwalking, but a full record is exactly what we lack— and we lack it because of Hayes's own litigation choices. See *Howard v. O'Sullivan*, 185 F.3d 721, 724-26 (7th Cir. 1999); *Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997).

This conclusion, which Hayes essentially conceded by the time of his reply brief, drives him to contend that the default should be excused to avoid a "fundamental miscarriage of justice"—which is to say, the conviction of an innocent person. Factual innocence indeed relieves a petitioner of a procedural default, at least when the error affects the finding of guilt, as opposed to a non-capital sentence. Compare 28 U.S.C. §2254(e)(2)(B) and *Murray v. Carrier*, 477 U.S. 478, 496 (1986), with *Dretke v. Haley*, 541 U.S. 386 (2004). Yet how could we conclude, in the statutory language, that "the facts underlying the claim . . . establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"? Suppose that the six alibi witnesses had been called. That would at best have produced a draw: six eyewitnesses identify Hayes as the culprit, six others exculpate him. That cannot establish that "no reasonable factfinder would have found the applicant guilty of the underlying offense"; it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar. Cf. *Branion v. Gramly*, 855 F.2d 1256 (7th Cir. 1988).

On Hayes's view a "miscarriage of justice" occurs whenever a better lawyer might have created a reasonable doubt in one juror's mind. That can't be enough (and under the statute isn't enough); if it were, then *every* claim of ineffective assistance would show "miscarriage of justice" and the rules of procedural default would be hollow, for to show ineffective assistance on the merits the petitioner must

establish that the lawyer's blunders could have altered the outcome. That's the prejudice component of *Strickland v. Washington*, 466 U.S. 668 (1984). Proof of innocence must be considerably more than the proof required to establish prejudice. See *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Dunham v. Thomas*, 313 F.3d 724, 730 (2d Cir. 2002).

To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim. See *Schlup*, 513 U.S. at 324. Hayes reminds us that eyewitnesses err all too frequently and that jurors often give this kind of evidence more weight than it deserves, but he was convicted on the testimony of *six* eyewitnesses. The risk that all six independently made the same mistake is slight. Cf. *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003) (discussing probability of multiple, independent misidentification). If because of the coaching there were only five independent identifications, still the probability that they made the same error is small—considerably smaller, one would think, than the likelihood that Hayes's family was willing to commit perjury to save him from capital punishment. (Hayes originally was sentenced to death, but the Supreme Court of Illinois reduced the sentence to life imprisonment. *People v. Hayes*, 139 Ill. 2d 89, 564 N.E.2d 803 (1990).) Either family solidarity or threats of harm could produce false alibi testimony, given how rarely prosecutors bring perjury charges against defense witnesses.

Let us turn, then, to the allegations of constitutional error at trial. The first two are not available on federal collateral review. Hayes contends that his arrest violated the fourth amendment and that two items of evidence should have been suppressed as a result: the arrest warrant and the lineup identifications, which he describes as fruits of the wrongful arrest. But *Stone v. Powell*, 428 U.S. 465 (1976),

holds that federal courts hearing collateral attacks under §2254 may not enforce the exclusionary rule unless the state judiciary denied the defendant a full and fair opportunity to contest the search or seizure. See also *Hampton v. Wyant*, 296 F.3d 560 (7th Cir. 2002). Hayes does not contend that Illinois withheld a full and fair opportunity to litigate his arguments based on the fourth amendment; he simply asks us to disagree with the state courts' decision, a path that *Stone* closes.

His third claim of trial error is that the jury should not have learned that it took two weeks to apprehend him. A detective went to Hayes's home and asked a family member (with whom he left his card) to have Hayes give him a call. Unsurprisingly, Hayes did not call. Instead he went missing. He stopped visiting his home. Two weeks later, during a stakeout of a currency exchange that Hayes was known to frequent, he was seen and arrested. This sequence could have been the basis for an inference that flight evinces consciousness of guilt. Because the prosecutor did not make such an argument, however, Hayes now insists that the evidence should not have been admitted. This sounds like a complaint that the prosecutor did not use all of his weapons; how did that injure Hayes? Perhaps because the jurors would draw the inference without the need for argument? But it would have been a sound inference; there is no problem under the federal Constitution, and if (as Hayes insists) the evidence should have been excluded as a matter of Illinois law that is none of our concern. See *Estelle v. McGuire*, 502 U.S. 62 (1991). Section 2254 is not a means to enforce rules of state law.

Finally, Hayes contends that the prosecutor's comments about the Nelson family were unfairly prejudicial. Hayes says that the jury should not have been told that Ronald was a college professor with a doctorate and that Roger is an ordained minister who had been in a seminary at the time of the crimes. The single paragraph devoted to this is-

sue in Hayes's brief does not even try to explain why the Constitution prevents a jury from knowing these things; we cannot imagine why it would. The Supreme Court of Illinois deemed the prosecutor's comments improper under state law but also found the error to be harmless. 564 N.E.2d at 826. There is no basis of relief in this collateral proceeding.

AFFIRMED

FLAUM, *Chief Judge*, concurring.   I join in the Court's opinion as to each of petitioner's claims. While I agree that Hayes has not demonstrated that a "miscarriage of justice" will occur if the procedural default of his ineffective assistance of counsel claim is not excused, I comment separately to underscore what I understand to be the basis of this holding.

Section 2254(e) permits an evidentiary hearing in federal court on a defaulted claim if the facts underlying the claim would be sufficient to establish that but for the alleged constitutional error, "no reasonable factfinder would have found the applicant guilty of the underlying offense." A court may consider any relevant evidence in making this determination. *See Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) ("In assessing the adequacy of petitioner's showing . . . the district court is not bound by the rules of admissibility that would govern at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence.") (internal quotations omitted).

In support of his petition, Hayes presented the grand jury testimony of six family members. Although each testified to seeing Hayes at home near the time of the crime, none

could attest to being in his presence continuously during the relevant period. Hayes did not offer any witness affidavits stating that he could not have left the house during this time or any other evidence that might support a complete alibi defense. The evidence presented simply was insufficient to satisfy petitioner's burden of establishing that no reasonable factfinder would have found him guilty.

This is not to suggest that eyewitness testimony can never satisfy the "miscarriage of justice" standard. In *Schlup*, the Supreme Court noted that "trustworthy eyewitness accounts" may be enough. 513 U.S. at 324. There, the petitioner presented favorable affidavits of prison inmates who had witnessed the offense of conviction and a former prison lieutenant who had observed the petitioner's demeanor near the time of the crime. Even though there was some reason to doubt the credibility of these witnesses, and their affidavits were contradicted by the trial testimony of other eyewitnesses, the Court remanded the case for reconsideration by the district court.

The majority observes that "it is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." Nonetheless, the mere existence of sufficient evidence to convict is not determinative of an actual innocence claim. *Schlup*, 513 U.S. at 330. Unlike a review of the sufficiency of the evidence which focuses on whether a rational juror *could* have convicted, a habeas court considering actual innocence may weigh any new evidence against that which was presented at trial and even make credibility assessments in determining whether rational jurors *would* have convicted. *Id.* I do not understand our decision today to disturb this established law or to categorically preclude relief from procedural default where an actual innocence claim is based solely on new eyewitness evidence. Although documentary or biological evidence may carry more weight in some cases, a petitioner's burden may be satisfied with other types of evidence as well.

No. 03-3074 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*