In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1388

SVONDO WATSON,

*Petitioner-Appellant,*

v.

DONALD HULICK, Warden,[1]

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 9101—**David H. Coar**, *Judge.*

———————

ARGUED NOVEMBER 27, 2006—DECIDED MARCH 26, 2007

———————

Before WOOD, EVANS and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A jury in DuPage County, Illinois, convicted Svondo Watson of first-degree murder, attempted murder, and home invasion, but on direct appeal the Appellate Court of Illinois overturned his convictions after concluding that Watson was denied the effective assistance of trial counsel. He was tried again, and the second jury also convicted him. This time the

_____

[1] While his federal petition was pending in the district court, Watson was transferred to Menard Correctional Center. We have substituted Donald Hulick, the warden of Menard, as the respondent in this appeal. *See* Fed. R. App. P. 43(c).

appellate court affirmed the convictions, and the Supreme Court of Illinois denied leave to appeal. After exhausting his state-court remedies, Watson petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. The district court denied relief, and Watson appeals. We conclude that federal-court review of his Fourth Amendment claim has been foreclosed, and that the state court's resolution of his Sixth Amendment claim was reasonable in light of the evidence presented in that proceeding. We therefore affirm the district court's denial of Watson's petition.

## I. BACKGROUND

### A. Watson's Arrest and Confessions

The following facts are not in dispute. In the early morning hours of June 7, 1994, Leo McDaniel and his girlfriend, Keisha Twitty, were shot as they slept in McDaniel's apartment. McDaniel died, but Twitty survived the attack and told police officers in Lombard, Illinois, that Watson was the shooter. At about 10:00 a.m. that same day, officers arrested Watson at his home in Chicago and took him to the police station in Lombard. Watson was given *Miranda* warnings when he was arrested, and he told officers that he understood them. That afternoon, Assistant State's Attorney Brian Nigohosian informed Watson during a twenty-minute interview that Twitty had identified him to police. Watson also spoke with several police officers, but he never asserted his right to remain silent or requested counsel.

At roughly 5:30 p.m. Watson asked to speak to Lieutenant Dane Cuny, one of the officers who previously had interviewed him. Cuny reminded Watson of the *Miranda* warnings, and Watson stated that he understood his

rights and "wanted to tell the truth." He then confessed to being McDaniel's killer and went into detail about where he had discarded the gun. Cuny interrupted Watson's confession because he wanted to get a second officer to witness the statement, but when he and another officer returned to the interview room, Watson denied having made the admissions.

Meanwhile, other officers had obtained a search warrant for "the house that the defendant was found at in Chicago." Watson lived on the second floor of a two-story building. The building contained separate apartments in the basement, first, and second floors, but because the search warrant referenced "the house," police searched the entire building. While searching a bedroom closet in the first-floor apartment, the officers found a backpack bearing Watson's name and bullets matching those recovered at the crime scene.

Back at the police station, Watson ate dinner at around 6:30 p.m., and about ninety minutes later an officer came to retrieve the garbage from his dinner. Watson asked the officer "what was going on," and the officer informed him that detectives "had gone back to the house" in Chicago where Watson was arrested and "recovered a couple of items." After hearing this information, Watson volunteered to the officer that he shot McDaniel and Twitty. The officer called in another officer, and Watson repeated his confession. Watson then asked to speak with Assistant State's Attorney Nigohosian and when he arrived, Watson confessed once more. Nigohosian and one of the officers then left the interview room to find a tape recorder. As they walked past the lobby, Nigohosian and the officer were told that Watson's attorney, Todd Urban, was in the building and wanted to speak to his client. Urban apparently had called earlier in the day, but did not tell the police not to question Watson. Urban then directed

Nigohosian to not record Watson's statements, and his request was honored.

## B. Watson's Trials

On June 9, 1996, the jury at Watson's initial trial found him guilty of first-degree murder, attempted first-degree murder, and home invasion. On appeal to the Appellate Court of Illinois, Watson argued that he was denied the effective assistance of counsel because his trial attorney did not move to suppress the evidence obtained during the execution of the search warrant. As we noted earlier, Watson lived on the second floor of a two-story building containing three separate apartments, but the terms of the search warrant authorized police to search the entire building. The appellate court concluded that the searching officers knew or reasonably should have known that there were separate apartments in the building, and that the police had probable cause to search only the second-floor apartment. The appellate court reasoned that, because Watson's attorney did not move to suppress the incriminating evidence found in the first-floor apartment, his trial performance fell below an objective standard of reasonableness. The appellate court determined that the attorney's conduct undermined its confidence in the outcome, and remanded the case for a new trial.

Before the start of the second trial, Watson moved to quash his arrest, to suppress the evidence seized during the search, and to suppress his confessions. The trial court granted Watson's motion to suppress the items seized during the search, but denied the remaining motions. Because Twitty identified Watson as the shooter, the court concluded that there was probable cause for his arrest. With regard to his admissions, the court found that Watson had not been denied access to counsel, that he initiated the conversations with the police, and that

he was not confronted with improperly discovered evidence before he confessed. The case was tried and, on July 29, 1998, Watson was again convicted.

## C. Post-conviction Proceedings

After he was convicted, Watson filed a direct appeal with the Appellate Court of Illinois. He argued that the trial court should have suppressed his confessions because (1) they were the tainted fruit of illegally seized evidence and (2) the police violated his Sixth Amendment right to counsel by denying him access to his attorney. The appellate court agreed with the trial court's finding that Watson waived his right to remain silent and to consult with counsel since he talked with the officers throughout the day without asserting either of those rights. *See People v. Watson*, 735 N.E.2d 75, 84 (Ill. App. Ct. 2000). The appellate court also agreed that Watson's confessions were not provoked by the mention of a "couple of items" found at the residence, *id.* at 87-88, and affirmed the trial court's judgment.

Watson petitioned for leave to appeal to the Supreme Court of Illinois. In his petition, Watson argued that the appellate court (1) incorrectly held that his confessions could be attributed to the search only if police confronted him with specific items seized during the search; (2) overlooked one of the factors enumerated in *Brown v. Illinois*, 422 U.S. 590 (1975), in determining whether the confessions were sufficiently attenuated from the search; (3) should have determined that his waiver of his right to counsel was uninformed; (4) incorrectly ruled that his Sixth Amendment right to counsel did not attach when Nigohosian became involved in the investigation; and (5) deprived him of due process by affirming a conviction that lacked evidentiary support. The Supreme Court of Illinois denied Watson's petition.

Watson filed this petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. *See* 28 U.S.C. § 2254. In his petition, Watson argued, among other things, that (1) his confessions should have been inadmissible because officers baited him by mentioning the search; (2) the appellate court's attenuation analysis was incorrect; (3) Nigohosian's involvement caused his Sixth Amendment right to counsel to attach, therefore the police violated this right by interviewing him without counsel present; (4) he was unable to fully and fairly litigate his Fourth Amendment claims because the state courts ignored evidence that his confessions were prompted by notice of the search; and (5) the Supreme Court of Illinois deprived him of due process by denying leave to appeal.

The district court held that federal-court review of Watson's Fourth Amendment claims was foreclosed because Watson had the opportunity to litigate them in state court. *See Watson v. Briley*, No. 01-C-9101, 2005 WL 736656, at \*8-9 (N.D. Ill. Mar. 31, 2005). The court also held that the state appellate court's interpretation of the facts and law regarding whether Watson's right to counsel attached because of Nigohosian's involvement in the investigation was reasonable, and denied relief on that ground. *Id.* at 10. Although the district court denied Watson's petition, it concluded that he made a substantial showing of the denial of a constitutional right with respect to two issues—whether intervening circumstances broke the connection between the unlawful search and Watson's confessions, and whether Nigohosian had assumed a formal prosecutorial role sufficient to invoke Watson's right to counsel—and granted a certificate of appealability.

## II.  ANALYSIS

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), habeas corpus relief is available only if Watson can establish that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review the denial of a § 2254 petition de novo. *Goodman v. Bertrand*, 467 F.3d 1022, 1026 (7th Cir. 2006).

### B.  Fourth Amendment Claim

On appeal Watson first argues that his confessions should have been inadmissible at trial because they were triggered by the officers' illegal search of the first-floor apartment. He further contends that the Appellate Court of Illinois failed to determine whether intervening circumstances broke the causal chain between the unlawful search and his confessions. *See Brown*, 422 U.S. at 603. As the district court noted, a petitioner cannot obtain collateral relief on a Fourth Amendment claim unless the state courts deprived him of a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 481-82 (1976); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005); *Mahaffey v. Schomig*, 294 F.3d 907, 918-19 (7th Cir. 2002). In this case, Watson challenged the admissibility of his confessions in the trial court and renewed the claim before the appellate court. *See Watson*, 735 N.E.2d at 85-89. Watson argues that the appellate court's "failure"

to consider one of the *Brown* factors denied him a full and fair opportunity to litigate the Fourth Amendment claim, but we have held that a "full and fair opportunity" guarantees only "the right to present one's case." *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003); *see Hampton v. Wyant*, 296 F.3d 560, 563-65 (7th Cir. 2002); *accord Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). Watson presented his Fourth Amendment claim to the Illinois courts, and "[a]bsent a subversion of the hearing process," we will not examine whether those courts "got the decision right." *Cabrera*, 324 F.3d at 531. Therefore we agree with the district court that federal habeas corpus review of Watson's Fourth Amendment claim was foreclosed. *See Wyant*, 296 F.3d at 565.

## C.  Sixth Amendment Claim

Watson next argues that his Sixth Amendment right to counsel attached upon Nigohosian's "adversarial" involvement in the investigation, and that this right was violated because Watson did not have access to counsel during his confessions. We review the decision of the last state court to rule on the merits, in this case, the Appellate Court of Illinois. *See Burgess v. Watters*, 467 F.3d 676, 681 (7th Cir. 2006). Whether the state court's holding is contrary to clearly established federal law is a mixed question of law and fact that we review de novo, but we defer to any reasonable state-court decision. *See id.*

The Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, whether by way of formal charge, indictment, information, or arraignment. *Fellers v. United States*, 540 U.S. 519, 523 (2004); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). This right to counsel applies not only at trial, but also at any critical stage of the prosecution. *Jackson v. Miller*, 260 F.3d 769, 775 (7th Cir. 2001). In this case, Watson had not been

indicted and charges had not been brought against him when he confessed to Nigohosian. Watson cites Illinois law, which holds that the level of prosecutorial involvement may bear on whether the defendant's right to counsel has attached, *see, e.g.*, *People v. Garrett*, 688 N.E.2d 614, 618 (Ill. 1997), and asks us to find that his right to counsel attached because of Nigohosian's participation in the investigation. But again, formal proceedings had not begun, so Watson had no Sixth Amendment right to counsel when he confessed. *See Moran v. Burbine*, 475 U.S. 412, 428-32 (1986) (rejecting claim that Sixth Amendment right to counsel mandated suppression of statements made before initiation of adversary judicial proceedings because defendant's lawyer was not present). We have also held that interrogation of a suspect before the filing of a charge, without more, does not trigger the right to counsel. *See First Def. Legal Aid v. City of Chi.*, 319 F.3d 967, 970-71 (7th Cir. 2003); *Sulie v. Duckworth*, 689 F.2d 128, 130 (7th Cir. 1982).

Even if Watson's right to counsel had attached—which it had not—he clearly waived the right. The parties did not address this issue on appeal, but we have held that a defendant is permitted to make a knowing and intelligent waiver of his right to counsel during a police-initiated interrogation. *See United States v. Spruill*, 296 F.3d 580, 589-90 (7th Cir. 2002). Here Watson was given the *Miranda* warnings upon his arrest and was reminded of them before he made his first confession. The Appellate Court of Illinois found that he "voluntarily, knowingly, and intelligently waived his rights," *Watson*, 735 N.E.2d at 84, and nothing in the record suggests otherwise. We therefore conclude that the state court's decision was reasonable and that Watson is not entitled to collateral relief on his Sixth Amendment claim.

**D. Due Process Claims**

Watson's final argument on appeal is that the Illinois courts deprived him of due process. Watson faults the appellate court for basing its decision on "sham facts of its own creation" and further contends that the Supreme Court of Illinois "transgressed its own rules denying Watson's appeal as of right." Watson was granted a certificate of appealability only with respect to his Fourth and Sixth Amendment claims, and he has not made a substantial showing of the denial of a constitutional right, as is required by 28 U.S.C. § 2253(c) to expand the certificate. *See Dellinger v. Bowen*, 301 F.3d 758, 768 (7th Cir. 2002). Although he disputes the appellate court's factual findings, Watson cannot rebut the presumption of correctness that these findings enjoy. *St. Pierre v. Walls*, 297 F.3d 617, 627 (7th Cir. 2002). Moreover, as the district court noted, the state supreme court's misinterpretation of its procedural rules does not constitute a violation of federal constitutional law, and is therefore not a basis for collateral relief. *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003).

## III.  CONCLUSION

For the reasons stated above, we affirm the district court's denial of Watson's petition for a writ of habeas corpus.

No. 06-1388                                                    11

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
