In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

Nos. 07-2151 and 07-2281

OBADYAH BEN-YISRAYL, formerly known as
CHRISTOPHER PETERSON,

*Petitioner-Appellant,*
*Cross-Appellee,*

*v.*

EDWIN G. BUSS, Superintendent,

*Respondent-Appellee,*
*Cross-Appellant.*

———————————

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06 C 577—**Allen Sharp**, *Judge.*

———————————

ARGUED JANUARY 11, 2008—DECIDED AUGUST 28, 2008

———————————

Before BAUER, POSNER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Obadyah Ben-Yisrayl, formerly known as Christopher Peterson, was convicted of two counts of murder by an Indiana jury. After extensive proceedings through the Indiana and federal courts, he

was ultimately sentenced to two consecutive sixty-year terms of imprisonment. He filed a petition for a writ of habeas corpus, claiming various constitutional violations. The district court denied the petition in part and granted the petition in part. We reverse the district court's grant of the petition and affirm the denial.

## I. BACKGROUND

On the afternoon of December 19, 1990, Ilija (Eli) and George Balovski were found dead inside their tailor shop in Gary, Indiana. Both died of shotguns wounds to the head.

Shortly after the Balovski killings, Antwion McGee, a friend of Ben-Yisrayl's, met with Ben-Yisrayl, who told McGee that he "got the guys at the tailor shop" and then described the murders in detail. McGee passed this information on to the police. The police then went to Ben-Yisrayl's home and obtained consent to search the home from petitioner's mother, who lived with him. After searching the home, the police discovered a shotgun in Ben-Yisrayl's closet, which tests later confirmed had fired a spent shell casing found at the scene of the Balovski murders. The police took Ben-Yisrayl into custody, whereupon he confessed to shooting the Balovskis, giving a detailed account of the murders. Ben-Yisrayl was further questioned about a series of other murders that had occurred in the area surrounding Gary which, because of the weapon involved, were called in media reports the "shotgun killings." Ben-Yisrayl admitted to being the shooter in all seven of these other shootings.

Ben-Yisrayl was tried for the seven shootings over a span of four trials. At each trial, the prosecution relied on evidence that (1) the shotgun used in the shootings was found in Ben-Yisrayl's bedroom; and (2) Ben-Yisrayl confessed to the shootings. Ben-Yisrayl presented evidence that a "light-skinned man" matching the description of a composite sketch obtained by the police was seen in the vicinity of each of the crimes (Ben-Yisrayl describes himself as a "dark-skinned black man"). In the first two trials, Ben-Yisrayl was acquitted. He was convicted in the third trial of two counts of murder (the "Porter County convictions"), but this court held that the prosecutor's improper closing statements rendered the convictions constitutionally invalid. *Ben-Yisrayl v. Davis*, 431 F.3d 1043 (7th Cir. 2005). He has yet to be retried for these shootings. It is the fourth trial, in which Ben-Yisrayl was convicted, that gave rise to the appeal before us today.

On May 4, 1992, a jury convicted Ben-Yisrayl of murdering the Balovski brothers. On June 5, 1992, the Indiana trial judge, over the jury's recommendation, imposed the death penalty. Ben-Yisrayl's conviction and sentence were affirmed by the Indiana Supreme Court. *Peterson v. State*, 674 N.E.2d 528 (Ind. 1996). He filed a petition for post-conviction relief, which the trial court denied; the Indiana Supreme Court affirmed the denial. *Ben-Yisrayl v. State*, 729 N.E.2d 102 (Ind. 2000). The state court judgment against Ben-Yisrayl became final on December 14, 2000.

Next he turned to the federal court, filing a motion for writ of habeas corpus challenging his conviction and

sentence. That petition was denied. *Ben-Yisrayl v. Davis*, 245 F. Supp. 2d 960 (N.D. Ind. 2002). While his appeal from that decision was pending, the Indiana Supreme Court issued *Saylor v. Indiana*, 808 N.E.2d 646 (Ind. 2004), ruling that a defendant could not be sentenced to death over a jury's recommendation to the contrary. Ben-Yisrayl then filed a new petition for post-conviction relief, which the Indiana Supreme Court granted, vacating his death sentence. We then dismissed Ben-Yisrayl's appeal before this court on October 29, 2004 under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) for lack of jurisdiction, finding that, because Ben-Yisrayl had not been resentenced by an Indiana court, the judgment had not become final. *Ben-Yisrayl v. Davis*, 114 Fed. App'x 760 (7th Cir. 2004) (unpublished order). We noted that Ben-Yisrayl could refile his habeas petition after resentencing and after he exhausted his state court remedies.

On December 13, 2004, the Indiana trial court imposed two consecutive sixty-year terms. The Indiana Court of Appeals affirmed the sentence. After his petition for rehearing and petition to transfer jurisdiction to the Indiana Supreme Court were both denied, Ben-Yisrayl filed the habeas petition at bar.

The district court entered an Amended Memorandum Opinion and Order on May 3, 2007, granting the writ with regard to the two sixty-year terms of incarceration based on the court's conclusion that the invalid Porter County convictions played too great a role in the imposition of the sentence, but denying the remainder of the petition, relying on the reasoning in the first denial of habeas in 2002. This timely appeal followed.

## II. DISCUSSION

On appeal, Ben-Yisrayl argues that the district court erred by (1) finding that the Indiana Supreme Court had not unreasonably applied *Strickland v. Washington*; (2) rejecting Ben-Yisrayl's challenge to the admission of his confession; and (3) rejecting Ben-Yisrayl's *Brady* claim regarding a failure to disclose exculpatory evidence. On cross-appeal, the State argues that the district court had no authority to grant habeas relief with respect to Ben-Yisrayl's sentence. We review each issue in turn.

We review *de novo* the district court's denial of a habeas petition. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief only if the state court's "decision was contrary to, or involved an unreasonable application of, Supreme Court precedent," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 376, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "contrary to" clause of § 2254(d)(1), the habeas petitioner must show that the state court's decision "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases" or if the court "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Calloway v. Montgomery*, 512 F.3d 940, 943 (7th Cir. 2008) (citing *Williams*, 529 U.S. at 405, 120 S.Ct. 1495 and *Bell v. Cone*, 535 U.S. 685, 686, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)). Under the "unreasonable application" clause, a petitioner must show that the state court's

decision unreasonably extended a rule to a context where it should not have applied or unreasonably refused to extend a rule to a context where it should have applied. *Virsnieks*, 521 F.3d at 713 (citing *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001)); *see also Wright v. Van Patten*, ___ U.S. ___, 128 S.Ct. 743, 746-47, 169 L.Ed.2d 583 (2008) (emphasizing that a state court's application of clearly established law is acceptable, even if it is likely incorrect, so long as it is reasonable). We presume state factual findings to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); *Wiggins v. Smith,* 539 U.S. 519, 528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005). The presumption of correctness also applies to factual findings made by a state court of review based on the trial record. *Sumner v. Mata*, 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Rodriguez v. Peters*, 63 F.3d 546, 554 (7th Cir. 1995); *see Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

As a general matter, under post-AEDPA habeas law, we defer to a great extent to the decisions of the state courts, and review these decisions for reasonableness only. *Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir. 2006).

### A.  Ineffective Assistance of Counsel

Ben-Yisrayl argues that his Sixth Amendment right to counsel was violated by his trial counsel's negligent

failure to call Patrick Fleming to testify.[1] He argues that, in ruling against him, the Indiana Supreme Court unreasonably applied *Strickland* and unreasonably determined the facts in doing so.

As part of his post-conviction petition, Ben-Yisrayl submitted the affidavit of Fleming, who stated that he was in Eli Balovski's tailor shop on the afternoon of the murders, and that as he was leaving the shop at 4:10 or 4:20 p.m., he noticed a car on the opposite side of the street from the tailor shop with a person in the driver's seat. Fleming got in his own car, made a U-turn, and drove past the car. He noticed that the man was "white" with dark

---

[1] In his petition and on appeal, Ben-Yisrayl argues that he is entitled to habeas relief under *Strickland* not only for his trial counsel's failure to *call* Fleming, but also for trial counsel's (1) failure to read the discovery provided to him by the state which included information relating to Fleming and (2) failure to investigate the exculpatory statements. However, he did not raise these two latter issues in the Indiana courts, and the Indiana Supreme Court did not address these other grounds, either in its denial of post-conviction relief or its denial of Ben-Yisrayl's successive post-conviction relief petition. To preserve a federal claim for collateral review, a petitioner must fairly present the federal nature of his claim to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentation requires that "both the operative facts and the controlling legal principles" be submitted to the state courts. *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). We therefore will only address the Indiana Supreme Court's application of *Strickland* to Ben-Yisrayl's counsel's failure to call Fleming.

hair and dark eyes, and when he drove past, the man reached between his legs and "made sure that I couldn't see what he had there." Fleming thought the man had a gun. He also thought that the man in the car was one of the men in the composite sketches published in area newspapers relating to the shotgun shootings. This information was available to Ben-Yisrayl's counsel at trial.[2]

Ben-Yisrayl's argument before the Indiana Supreme Court rested primarily on a comparison of the evidence in the Gary murder trial, where he was convicted, and the first two trials, where he was acquitted. Specifically, he noted in his first two trials he was able to present evidence placing a "light-skinned man" at the scene of the crime, whereas in the Gary murder trial he was not. Had he introduced this evidence through Fleming at the trial for the Balovski murders, Ben-Yisrayl argued before the Indiana Supreme Court and argues before us, the outcome would have followed that of his earlier acquittals.

The Indiana Supreme Court examined *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in evaluating Ben-Yisrayl's claim of ineffective assistance. To succeed under *Strickland*, as the Indiana Supreme Court understood, one must show that trial counsel's performance fell below an objective standard of

---

[2] In the post-conviction proceedings, Ben-Yisrayl's trial counsel argued that the State had not disclosed this information prior to trial. The post-conviction court ultimately found that the State had, in fact, turned over the Fleming information as part of discovery.

reasonableness and that prejudice resulted. *Id.* at 687-88, 693, 104 S.Ct. 2052. For the first prong, review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Johnson v. Loftus*, 518 F.3d 453, 457 (7th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052)). A petitioner must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052)). To show prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Again, for the purposes of our review, the state court's application of these principles must be objectively unreasonable and not merely erroneous. *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003).

Ben-Yisrayl claims the Indiana Supreme Court made two errors, one under 28 U.S.C. § 2254(d)(1) and another under § 2254(d)(2). Ben-Yisrayl first submits that the Indiana Supreme Court unreasonably applied Supreme Court precedent in finding that he was not prejudiced by his trial counsel's failure to call Fleming. The Indiana Supreme Court, applying the *Strickland* standard, assumed a deficiency of counsel's performance but found Ben-Yisrayl failed to satisfy the prejudice requirement. The

Court pointed to the substantial evidence presented at trial—most critically, the shotgun found in Ben-Yisrayl's closet and his confession to the killings—and noted that Fleming's testimony would not have "unerringly or unmistakably" led to a different conclusion. Though Fleming "thought" the man had a gun in the car, he did not actually see a gun; and though there is some dispute about the timing of the identification and the shooting (more on this below), Fleming would not have been able to undisputably put the man in the car at the scene near the time of the shooting. Without these potentially ex-culpatory details, the Indiana Supreme Court found, the *Strickland* claim must fail.

Ben-Yisrayl disagrees with this result; again, our review under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1) is limited to whether the Court extended a rule to an inapplicable context or refused to extend a rule to an applicable context. Neither of these situations is present here. The Court properly weighed the strength of the evidence against Ben-Yisrayl against Fleming's af-fidavit, and did not find a reasonable probability of a different outcome from calling Fleming. Accordingly, we will not disturb the Indiana Supreme Court's reasonable application of *Strickland*.

The second error claimed by Ben-Yisrayl concerns the facts as determined by the Indiana Supreme Court. In analyzing the prejudice prong of *Strickland*, the Court "decline[d] to attach much significance to the [two previ-ous] acquittals," but engaged in Ben-Yisrayl's argument regarding these acquittals anyway. It held that the "evi-

dence presented in the first two trials regarding another possible shooter was much more compelling than that presented in Flemings's affidavit." *Ben-Yisrayl v. State*, 729 N.E.2d at 108. In one case, the Court noted, an eyewitness sitting in the victim's car when she was shot testified that she observed a "light complected male wearing a trench coat" standing next to the car. In another, two witnesses testified that they saw a "white male . . . with a trench coat" walking toward a car "with a cylindrical object parallel to his leg" shortly before they heard a shotgun blast. In both of these cases the witnesses saw a "light-skinned man" directly before the shootings. The Court concluded: "By contrast, Fleming's observations do not place anyone at the crime scene at the time of the shooting. Rather, Fleming places someone across the street a half hour before the shootings." The court also noted that Fleming did not actually see a gun, even though he "thought the man had a gun in his lap."

Ben-Yisrayl argues that this decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," in violation of § 2254(d)(2). He musters several inconsistencies between the record and the Indiana Supreme Court's factual determinations, but only one comes close to having merit: the timing of the identification and the shooting. Fleming's affidavit indicates he saw the man across the street of the tailor shop at 4:10 or 4:20; according to Ben-Yisrayl, a brother of the two Balovskis testified that he saw a man with a shotgun pointed at his brother at either 4:15 or 4:30. Therefore, Ben-Yisrayl argues, the shooting was at most twenty minutes after, and

potentially contemporaneous with, Fleming's identifica-
tion, and not "a half hour before the shootings." This
factual issue is relevant only because the Indiana Su-
preme Court, in analyzing the prejudice element of *Strick-
land*, disregarded Fleming's observations in his affidavit
because they did "not place anyone at the crime scene *at the
time of the shooting.*" The State chose to ignore this issue
in its brief.

   A petitioner's challenge to a state court decision based
on a factual determination under § 2254(d)(2) will not
succeed unless the state court committed an "unreasonable
error," and § 2254(e)(1) provides the mechanism for
proving unreasonableness. *See Ward v. Sternes*, 334 F.3d
696, 703-04 (7th Cir. 2003). If the petitioner shows that
the state court determined an underlying factual issue
against the clear and convincing weight of the evidence,
the petitioner has "gone a long way towards proving that
it committed unreasonable error." *Ward*, 334 F.3d at 704. "A
state court decision that rests upon a determination of
fact that lies against the clear weight of the evidence is,
by definition, a decision 'so inadequately supported by
the record' as to be arbitrary and therefore objectively
unreasonable." *Id.* (quoting *Hall v. Washington*, 106 F.3d
742, 749 (7th Cir. 1997)). This is a daunting standard, but
not insurmountable. *See Miller-El v. Cockrell*, 537 U.S. 322,
123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Deference does
not by definition preclude relief. A federal court can
disagree with a state court's credibility determination
and, when guided by AEDPA, conclude that the decision
was unreasonable.").

Upon careful review of the record, we find that the Indiana Supreme Court determined a factual issue against the clear and convincing weight of the evidence when it found that the identification was a "half hour before the shootings." The testimony of Slavko Balovski, the brother who saw the shooter in the tailor shop, contradicts the Supreme Court of Indiana's version of the facts. On direct examination, Balovski was asked about the timing of the shooting. He said that prior to the shooting, he and his two brothers were eating lunch at the tailor shop.

> Q: [Shortly] after 4:00 o'clock, had you and your brothers finished your food, sir?
>
> A: Just around after 4:00, 4:00 or 4:30 or something.

Afterwards, he went back to work at the shop; sometime later, he saw a man with a shotgun pointed at his brother. He then ran out of the tailor shop to get help at a muffler shop down the street, and on the way, he heard a gunshot. Three to four minutes had passed between the time the shooter entered the store and the time he reached the muffler shop. He then was asked:

> Q: Was this at approximately 4:30 in the afternoon?
>
> A: Yes, it was after 4:30.

On cross-examination, he was asked about the lighting conditions when he left the tailor shop and fled to the muffler shop: "It wasn't dark, it was like sunset, it wasn't very dark, it was imagine at that time, 4:15" [sic].

According to this record, Balovski places the time of the shooting at some point between "after 4:00" and "after

4:30." Separate testimony by police officers indicated that they had been dispatched to the scene at 4:45. Comparing this evidence with Fleming's affidavit—stating that he identified the individual in the car at 4:10 to 4:20—the length of time between the identification and the shooting is at most thirty-five minutes (extending the period of Bolovski's "after 4:30" until the dispatch of the police) and at least, potentially, within the same range of time. Therefore, the Indiana Supreme Court's finding that this time period was a "half hour" was a factual error against the clear and convincing weight of the evidence.

Because the "half hour" finding falls directly within the Indiana Supreme Court's analysis of the prejudice element of the *Strickland*, the finding reflects an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2); *see Wiggins*, 539 U.S. at 528, 123 S.Ct. 2527 (recognizing that a clear factual error "reflects 'an unreasonable determination of the facts'" under § 2254(d)). The fact that the Indiana Supreme Court's decision only partially rested on this fact does not alter the reasonableness of the determination of the *Strickland* claim. As in *Wiggins*, even a partial reliance on an erroneous fact finding can support a finding of unreasonableness. *Id.* (finding that, in the particular circumstances before the Court, the state court's "partial reliance on an erroneous factual finding further highlight[ed] the unreasonableness of the state court's decision").

However, our analysis does not end here. Despite a conclusion that the Indiana Supreme Court's finding was unreasonable, Ben-Yisrayl still must still establish that he

is entitled to habeas relief. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003); *see also Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2005) (citing *Aleman*, 320 F.3d at 690) ("[E]ven when the AEDPA standard does not apply—either because the state court's opinion was unreasonable or because the state judiciary did not address the constitutional claim—[a] prisoner still must establish an entitlement to the relief he seeks."). In this situation, § 2254(a) sets the standard: the court issues "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See Aleman*, 320 F.3d at 690.

We turn, then, to whether Ben-Yisrayl's counsel's failure to call Fleming constituted deficient performance. We assume, *arguendo*, that Ben-Yisrayl can meet the first prong of the *Strickland* analysis. Our primary focus rests upon whether counsel's failure to call Fleming prejudiced his defense. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. In doing so, we weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins*, 539 U.S. at 534, 123 S.Ct. 2527.

Ben-Yisrayl argues that Fleming, had he testified, would have placed a man matching the composite sketch of the shotgun killer in the vicinity of the crime within a brief window of time before the shootings. He further argues that he then would have introduced additional evidence that the witness who helped the police prepare the composite sketch later identified the killer as Ronald Harris.

Harris, an associate of McGee's and acquaintance of Ben-Yisrayl's, was later convicted of shooting one of the victims in the original set of seven "shotgun killings." *See Harris v. State*, 619 N.E.2d 577 (Ind. 1993).

Against this, we weigh the substantial evidence introduced against Ben-Yisrayl at trial, including: (1) his confession; (2) the ballistic evidence of the shotgun found in his home; and (3) McGee's testimony. Ben-Yisrayl certainly casts doubt on McGee's story at trial, but the jury ultimately accepted the testimony. As the State points out, the arguably mitigating evidence regarding the composite sketch and the Ronald Harris information might not be as helpful as Ben-Yisrayl claims. Introducing the composite might have opened the door to introducing the facts of the other shotgun killings, a potentially adverse outcome regardless of whether Ben-Yisrayl was ultimately convicted of the other murders. In the Ronald Harris conviction, the witness who identified Harris also saw and heard another individual acting as an accomplice. Had any of this information been produced at trial, the State could have argued that Ben-Yisrayl and Harris acted as accomplices in a string of killings in Northwest Indiana. Any mitigating effect of the Harris evidence, therefore, must be tempered by the potential for the evidence to strengthen the case against Ben-Yisrayl.

Putting aside these issues, we return to the core of Fleming's testimony: that he saw a light-skinned character in the vicinity of the tailor shop at some point prior to

the shooting.[3] Weighing this against the overwhelming evidence against Ben-Yisrayl, we cannot say with any confidence that the introduction of this sparse testimony would have altered the outcome of Ben-Yisrayl's trial. Accordingly, even though the Indiana Supreme Court made an unreasonable determination of the facts in light of the evidence presented, Ben-Yisrayl has failed to establish that he is entitled to habeas relief.

### B.  Admission of Ben-Yisrayl's Confession

Ben-Yisrayl next contends that his confession—or his "false" confession—was the result of an unreasonable post-arrest restraint that violated his Fourth Amendment rights. Under Indiana law, a person who is arrested without a warrant must be brought before a magistrate for a determination of probable cause within twenty-four hours. Ben-Yisrayl was detained for thirty-six hours before he was taken before a magistrate, and in the last twelve hours, he confessed to the shotgun murders. The Indiana Supreme Court found that, despite the delay in bringing Ben-Yisrayl before a magistrate, the appropriate remedy would not be to exclude his confession. The Court, after examining *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991),

---

[3] The police report relating to Fleming's encounter with the man in the car also indicated that Fleming "felt some negative energy" when leaving the tailor shop. We decline to assign much weight to this "energy."

found that the thirty-six hour delay was not a per se violation of the Supreme Court's mandate to "promptly" bring individuals arrested without a warrant before a magistrate. *Peterson v. State*, 674 N.E.2d 528, 537-39 (Ind. 1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998).

Our review of this issue will be short. As long as a habeas petitioner enjoyed an "opportunity for full and fair litigation of a Fourth Amendment claim" in state court, federal habeas review of the claim is barred. *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Miranda v. Leibach,* 394 F.3d 984, 990 (7th Cir. 2005); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). As a general principle, absent a subversion of the hearing process, we will not examine whether the state courts made the right decision. *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (citing *Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003)).

Ben-Yisrayl claims that he was deprived of a full and fair opportunity to litigate his Fourth Amendment claim because the Indiana Supreme Court failed to apply the relevant constitutional case law to the facts. He argues that the Indiana Supreme Court failed to address *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), a case which, he now points out, he presented to every Indiana court he faced in the course of his direct appeal. But therein lies the rub: Ben-Yisrayl had the full opportunity to litigate his claim and argue the relevant Supreme Court precedent, including *Brown*, at every stage of his proceedings in Indiana. There is no indication that the Indiana courts precluded that right. Regard-

less of our own judgment of whether *Brown* has any impact on Ben-Yisrayl's case, he received a full and fair hearing on this issue, and we will not second-guess the Indiana Supreme Court's reasoning. *See Watson*, 481 F.3d at 542; *Hayes,* 403 F.3d at 939 ("[Petitioner] simply asks us to disagree with the state courts' decision, a path that *Stone* closes."); *Cabrera*, 324 F.3d at 531-32.

### C.   Failure to Disclose Exculpatory Evidence

Ben-Yisrayl finally argues that the state failed to disclose material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he claims that the prosecution did not disclose (1) that State witness Ivory "Tito" Maxwell was a paid informant for the FBI; and (2) that the government's investigation of and search for the "shotgun killer" continued *after* Ben-Yisrayl's arrest and purported confession. When the government deliberately or inadvertently withholds evidence that is material and favorable to the defense, it violates the defendant's right to a fair trial, which is guaranteed by due process. *Brady*, 373 U.S. at 87-88, 83 S.Ct. 1194; *United States v. Wilson*, 481 F.3d 475, 480 (7th Cir. 2007). The government has a duty to disclose evidence, regardless of whether the criminal defendant requests it, and that duty applies equally to impeachment and exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)*; United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392*, 49 L.Ed.2d 342 (1976); *Wilson*, 481 F.3d at 480.

Ben-Yisrayl couches his claim in terms of habeas relief, but for all intents and purposes, he has brought a new *Brady* claim in the federal court, and requests plenary review from us. Post-AEDPA habeas petitions do not proceed in this fashion. Ben-Yisrayl fails to point us to any specific Indiana decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent, or resulted in a decision that was based on an unreasonable determination of the facts. *See Badelle*, 452 F.3d at 656-60. He notes that he raised the *Brady* issue in the Indiana courts during his post-conviction petition and successor post-conviction petition.[4] But he does not suggest any constitutional violations in the ultimate resolution of those issues by the Indiana courts. *Id.* at 656 (citing *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (noting that "[t]he habeas applicant has the burden of

---

[4] This claim is somewhat misleading, as far as we can glean from the voluminous record. At his original post-conviction proceeding, he argued before the Indiana trial court that the State improperly suppressed the Fleming affidavit, *not* the Maxwell information or the Bivens affidavit. In fact, in affirming the denial of the post-conviction relief, the Indiana Supreme Court specifically noted that "Ben-Yisrayl does not dispute [the finding that the Fleming affidavit was properly disclosed], and, therefore, does not put forth a claim under *Brady v. Maryland*." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 n.5 (Ind. 2000). He did raise the Maxwell and Bivens issues in his petition seeking successive post-conviction relief, though the Maxwell information was in the form of a *Strickland* claim, not a *Brady* claim.

proof to show that the application of federal law was unreasonable").

Ben-Yisrayl hints at the fact that the two pieces of evidence are "new evidence" that were not presented at the trial court, perhaps invoking the principle that *Brady* claims not raised at the state level are not procedurally defaulted when the petitioner was unable to present the claim to the state courts "because of the state's misconduct." *See Crivens v. Roth*, 172 F.3d 991, 995-96 (7th Cir. 1999) (citing *Reed v. Ross*, 468 U.S. 1, 14, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) ("We will not penalize [petitioner] for presenting an issue to us that he was unable to present to the state courts because of the state's misconduct."). But that principle does not apply here; Ben-Yisrayl affirmatively states that he had this information while his case was proceeding at the state level, and that he presented this evidence to the Indiana courts.

Because Ben-Yisrayl has not met his burden of showing any error of constitutional magnitude by the Indiana courts, habeas relief must be denied, and we decline his invitation to address the merits of the *Brady* claim.

### D. Relief Granted for Consecutive 60-Year Terms

Finally, the State argues on cross-appeal that the district court erred in granting habeas relief to Ben-Yisrayl with respect to the consecutive sixty-year terms imposed after he received relief in the state court under *Saylor v. State*, 808 N.E.2d 646 (Ind. 2004). The State submits that because the Indiana Court of Appeals relied on Indiana

law to affirm the consecutive sixty-year terms, and be-
cause Ben-Yisrayl cannot point to any federal basis for
habeas review, the district court erroneously granted relief.

The Indiana trial judge based Ben-Yisrayl's consecutive
sixty-year terms in part on aggravating circumstances,
including (1) the two prior Porter County convictions
(which were later invalidated); and (2) the fact that Ben-
Yisrayl was convicted of murdering multiple victims in
the Balovski trial. Using its powers under the Indiana
Constitution to review and revise sentences, Ind. Const.
Art. 7 § 6, the Indiana Court of Appeals found that even
if the Porter County murder convictions were invalid, Ben-
Yisrayl's enhanced sentences were proper. Under Indiana
law, according to the court, when a trial court improperly
applies one aggravating circumstances but other valid
aggravating circumstances exist, a sentence enhance-
ment may still be upheld. *See Hackett v. State*, 716 N.E.2d
1273, 1278 (Ind. 1999); *Edwards v. State*, 842 N.E.2d 849, 855
(Ind. Ct. App. 2006); *Hatchett v. State*, 740 N.E.2d 920, 929
(Ind. Ct. App. 2000). The Court of Appeals noted: "The
Porter County convictions were only two of three ag-
gravating circumstances found by the trial court, and
the third aggravator was clearly set forth in the court's
sentencing statement. The court properly found that the
fact that Ben-Yisrayl murdered not one but two people
in the case, served to aggravate the crime." *Ben-Yisrayl v.
State*, Cause No. 45A05-0501-CR-22, slip op. at 8-9 (Ind. Ct.
App. 2005). Citing Indiana Supreme Court precedent and
the Indiana Code, the Indiana Court of Appeals observed
that multiple killings could qualify as an aggravating
circumstance, and that a single aggravating circumstance

could both enhance a sentence and impose consecutive sentences. *Id.* (citing *Scuggs v. State*, 737 N.E.2d 385, 387 (Ind. 2000); *Tobar v. State*, 740 N.E.2d 109, 113 (Ind. 2003); Ind. Code § 35-38-1-7.1(a)(2) and (d)). Following these principles, the court found Ben-Yisrayl's sentence appropriate for the double murder of the Balovskis.

The district court, citing *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), found that the Porter County convictions still may have played an improper role in Ben-Yisrayl's sentence. The court observed:

> There may be some limited argument under a species of due process with regard to the possible use of the Porter County convictions in this case. Such is a very narrow question that is largely of state law, but some bits and pieces of it may be arguable under the Constitution of the United States as reflected in *Tucker* and its progeny.

Accordingly, the district court granted the writ and ordered the Indiana trial court to conduct a new sentencing.

This was error. Again, AEDPA limits habeas relief to specific circumstances not found here. The Indiana Court of Appeals decision was not "contrary to" clearly established federal law; that is, the court did not apply a rule that contradicts with governing law or decide a case differently that the Supreme Court has done on a set of materially indistinguishable facts. Nor was the decision an unreasonable application of federal law, as the court

did not refuse to extend a rule to a context where it should have applied.

Ben-Yisrayl argues that the decision of the Indiana Court of Appeals was contrary to and an unreasonable application of *Tucker* and *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). He argues that even if the Indiana Court of Appeals conducted the proper analysis under Indiana law, it failed to conduct an analysis of whether the imposition of the sentence violated due process as delineated by the Supreme Court. In *Townsend*, the Supreme Court found a due process violation where the sentencing court, in the absence of counsel, relied on materially false information about a criminal defendant's criminal history in making its sentencing decision. *Townsend*, 334 U.S. at 741, 68 S.Ct. 1252. Relying on *Townsend*, the Supreme Court in *Tucker* overturned a sentence where the sentencing judge had considered two prior convictions that had subsequently been invalidated for violation of the defendant's right to counsel. *Tucker*, 404 U.S. at 447, 92 S.Ct. 589. These two cases stand for the general proposition that a criminal defendant has the due process right to be sentenced on the basis of accurate information. *See Tucker*, 404 U.S. at 447, 92 S.Ct. 589; *United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006).

*Tucker* comes closest to addressing the issue before the Indiana Court of Appeals, and was referenced, obliquely, by the district court. But *Tucker* examined a different issue than what is before us today. Where *Tucker* asked whether habeas relief should extend to a sentence based on "misinformation of constitutional magnitude" in the

form of two previous invalid convictions, the question in this case is whether the relief should extend to a sentence based on an entirely proper aggravating circumstance. The Indiana Court of Appeals determined that the consecutive sentences could be based on the single aggravating circumstance of the double murders, exclusive of the two other invalid aggravators. It had the authority to make this determination under the Indiana Supreme Court's decision in *Hackett.* 716 N.E.2d at 1278 ("When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld."). No Supreme Court case or ruling of our court has found that the rule in *Hackett* violates *Tucker* or *Townsend* in these circumstances. It follows, therefore, that the Indiana Court of Appeals did not act contrary to clearly established federal law, nor did they unreasonably apply this law, in upholding his sentence.

We are bound by a state court's interpretations of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). The Indiana Court of Appeals properly followed the dictates of the Indiana Code and the Indiana Supreme Court in upholding Ben-Yisrayl's sentence; and in making this determination, the court did not run afoul of Supreme Court precedent. Habeas relief should not have been granted.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's decision to deny habeas relief, and REVERSE the district court's

limited grant of habeas relief with respect to Ben-Yisrayl's consecutive sentences.