In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1744

JOSEPH SMITH,

*Petitioner-Appellant,*

*v.*

SCOTT MCKEE, Acting Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-C-4482—**Joan B. Gottschall,** *Judge.*

ARGUED DECEMBER 1, 2009—DECIDED MARCH 16, 2010

Before POSNER, FLAUM and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* This case comes to us on appeal from a denial of a petition for habeas corpus. On March 9, 1995, an Illinois jury found petitioner, Joseph Smith, guilty of first-degree murder and attempted robbery. The trial court sentenced Smith to fifty-five years for the murder charge and fourteen years for the attempted armed robbery charge, to run concurrently. Smith brings this habeas petition to challenge his conviction on three

grounds: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and violation of his Sixth Amendment right to confront his accuser. The district court found that Smith had procedurally defaulted on all of these claims either because he did not raise them for an entire round of appellate review in the state courts or because the state court rested its decision on an independent state law ground. For the reasons set forth below, we affirm the district court's denial of the habeas corpus petition.

## I. Background

### A. Factual Background

During the late night hours of April 6, 1992, Frank Miranda, the victim, and Dale Sramek went to 47th Street and Leamington, on the southside of Chicago, to buy crack cocaine. They had both been smoking crack cocaine for several hours already that evening. While on the corner of 47th Street and Leamington, Bobby Severson and Charles Queen joined them. Antoine Edwards, Smith's co-defendant, approached Miranda, Sramek, Severson, and Queen and offered to get drugs for them. After about twenty minutes, Edwards returned to the empty lot near the corner of 47th and Leamington with another individual carrying a shotgun. Severson, Queen, and Miranda crossed the street into the empty lot where Edwards and the other individual were standing. According to Sramek, Miranda ran ahead because he wanted to be the first to get his drugs. As Miranda approached Edwards and the other individual, Edwards's

accomplice pulled out a shotgun and demanded money. Miranda replied to the demand for money by yelling "Fuck you" and walking away. As Miranda turned to walk away, Edwards's accomplice shot Miranda in the back.

After the shooting, Sramek and Queen remained at the scene to speak to the police. Severson left the scene before the police arrived. Sramek told the police that he could not make out the shooter's face but that he did see that the shooter was wearing a light jacket and yellow sweatpants. According to Queen's testimony at trial, Queen told the police that the shooter was tall and wearing a long, dark-colored jacket and was not wearing yellow sweatpants. The police did not document Queen's statement. Shortly after the shooting, Severson came forward as a witness. A month passed with no further developments in the case. Then, the police took Edwards into custody for a different robbery. Noticing a connection to the Miranda shooting, the police conducted a line-up in which Severson identified Edwards as the individual who offered to get the group drugs. After several conversations with Detective Michael Duffin and other police officers, Edwards told the officers that Smith was his accomplice and brought Detective Duffin to Smith's house. Smith was not home, but Smith's older brother gave Detective Duffin a photograph of Smith and Detective Duffin left his business card. Detective Duffin returned to the police station and placed the photograph of Smith in a photo array. Severson positively identified Smith as the shooter. Shortly thereafter, Smith returned home and called Detective Duffin. Detective Duffin sent

someone to pick up Smith. Once Smith arrived at the police station, Detective Duffin placed Smith in a line-up. Severson positively identified Smith again. Following the line-up, Smith gave a statement to Assistant State's Attorney James Sullivan and Detective Duffin admitting his involvement. This statement was not recorded. Smith did not reduce this statement to writing or sign anything acknowledging that he made such a statement.

At trial, the state's case against Smith mainly rested on the testimony of Sramek, Severson, and Queen, as well as the undocumented confession of Smith. Sramek testified consistently with his statement to the police on the night of the shooting that he could not identify the shooter. Severson testified consistent with his identification of Smith in the photo array and line-up. Queen, despite never having identified Smith prior to trial, identified Smith during his direct-examination testimony as the man who shot Miranda. Smith's counsel objected to this identification as unduly suggestive because Smith was the only black male at the defense table. The court overruled this objection. The state also called Assistant State's Attorney James Sullivan and Detective Duffin to testify about Smith's statement at the time of arrest. Both Sullivan and Detective Duffin testified that Smith confessed to the shooting and that Smith refused to reduce the statement to writing. Sullivan testified that he made notes of Smith's statement. Detective Duffin also testified that Edwards lead him to Smith's house, but did not testify to the content of any conversations between himself and Edwards. The trial court severed Edwards's trial from Smith's trial. Edwards did not

testify against Smith. Smith took the stand in his own defense and testified that he was home studying— he was seventeen and in high school at the time of the shooting—on the night of April 6, 1992. Smith also denied ever making a statement admitting to the shooting. Smith did not present any alibi witnesses.

During closing argument, the state made two comments relevant to Smith's habeas petition. The first comment related to Detective Duffin's testimony about his interview with Edwards. Although the state did not elicit the content of that interview from Detective Duffin during his testimony, the prosecutor repeatedly referred to the fact that Edwards led Detective Duffin to Smith's house during the closing argument. To cement the inference that Edwards had inculpated Smith in his conversation with Detective Duffin, the prosecutor made the following argument:

> Antoine Edwards after being picked out of the lineup has a conversation, and that conversation is with Detective Duffin. And you learn [sic] about that conversation. . . . But first of all he has a conversation, and after that conversation it's very important to note that after that conversation, where does he go? Where does Antoine Edwards go? He goes with Detective Duffin, and he goes to the house of Antoine Crawford, the man we later learn was given the gun that was involved in the shooting, and he goes with Detective Duffin to the house of [Smith].

Smith's counsel did not object to this statement during the prosecutor's closing argument. Later, in the state's

rebuttal closing, the prosecutor again broached the topic of Detective Duffin's conversation with Edwards, stating, "Is it Robert Severson who leads the police to this defendant? No, after a conversation with Antoine Edwards–." Smith objected to this argument mid-sentence. The court sustained the objection and instructed the jury to disregard the argument.

At the close of the trial, the court instructed the jury on law. Relevant to this habeas petition, the court gave Illinois Pattern Criminal Jury Instruction 3.15 when instructing the jurors on how they should weigh the identification testimony. At the time of Smith's trial, Jury Instruction 3.15 gave a five-factor analysis, but connected the five factors with "or," implying that the jury needs to find the presence of one of the five factors to find the identification reliable.

During deliberations the jury sent a note to the court that it was deadlocked. The court instructed the jury to keep deliberating and sequestered the jurors overnight. The next day the jury came back with a guilty verdict. The trial court sentenced Smith to fifty-five years in prison.

## B.  Procedural Background

Smith promptly appealed his conviction. On direct appeal, Smith raised three claims: (1) his right to confront witnesses against him was violated by the introduction of Edwards's statements to the arresting officer and the prosecutor's references to these statements in

closing argument; (2) the prosecutor made inflammatory arguments that reversed the presumption of innocence during closing argument; and (3) his sentence was excessive. The Illinois appellate court found that Smith waived his Confrontation Clause claim because he did not object to the testimony of Detective Duffin at trial nor did he address this issue in any post-trial motion. However, the court also found that this claim failed on the merits because Detective Duffin was explaining the course of his investigation and did not introduce Edwards's statements for their truth. The appellate court found that Smith had also waived this issue with regard to the prosecutor's statements in closing argument to which he did not object. The court went on to find that they would have been admissible even had Smith objected at trial because they explained the officer's course of conduct. The court cited to *People v. Gill*, 637 N.E.2d 1030, 1036 (Ill. Ct. App. 1992), to support its finding that there was no error with regard to the prosecutor's statement to which Smith did object because the objection was timely sustained and the jury was ordered to disregard the statement. Finally, the court found that the introduction of these statements would have been harmless even had they been improper because of the weight of the evidence against Smith. Turning to the second issue, the appellate court found that Smith waived his claim that the prosecutor's statements in closing potentially shifted the burden of proof, and that the statements would have been permissible even if the issue was not waived. Lastly, the appellate court found that the trial court did not abuse its discretion in sentencing Smith to fifty-five years in prison. Smith filed a Petition for Leave

to Appeal ("PLA") to the Illinois Supreme Court which was denied on March 31, 1999.

On June 22, 1999, Smith filed a *pro se* post-conviction petition. He raised five claims: (1) he was not convicted beyond a reasonable doubt; (2) there was no probable cause to arrest him; (3) he was convicted based on unreliable identification testimony; (4) his trial attorney was ineffective; and (5) his sentence was excessive. The trial court summarily dismissed the petition on the grounds that the issues were waived or barred by res judicata.

On July 19, 2000, Smith filed a petition for writ of habeas corpus in the Northern District of Illinois, advancing four claims: (1) the prosecution elicited false testimony regarding the arrest of Antoine Edwards; (2) the prosecution improperly vouched for the credibility of its witnesses; (3) the trial court abused its discretion in granting Edwards's motion to sever the trial; and (4) trial counsel was constitutionally ineffective for failing to investigate the evidence, file a motion to suppress, mount an adequate defense at trial, and challenge Queen's eyewitness identification as inadequate. On that same day, Smith filed a motion to stay the habeas proceedings until the conclusion of state court proceedings. On August 16, 2000, Smith voluntarily withdrew the petition.

On December 21, 2000, Smith filed a successive *pro se* post-conviction petition in the Circuit Court of Cook County. In this post-conviction petition, Smith reiterated his former claims and also alleged the existence of newly

discovered evidence of his actual innocence. Smith attached an affidavit of his co-defendant, Edwards, stating that Edwards had falsely implicated Smith and that Smith did not shoot Miranda. Smith also attached the affidavit of an eyewitness, Michael Williams, who was an acquaintance of Smith, stating that he saw the shooting and that Smith was not the shooter. The trial court dismissed the successive petition on February 22, 2001 as frivolous and patently without merit. Smith appealed, raising three claims: (1) the trial court erred in summarily dismissing Smith's successive post-conviction petition on forfeiture grounds because the petition stated the gist of a meritorious claim based on new evidence and actual innocence; (2) trial counsel was ineffective for failing to investigate alibi witnesses and for not objecting to the erroneous jury instruction; and (3) appellate counsel was ineffective for not raising a challenge to an in-court identification. On April 28, 2003, the state appellate court affirmed the trial court's dismissal of the successive petition. The court found that Smith's claims were forfeited and that petitioner had not demonstrated cause and prejudice to excuse the forfeiture. Smith filed a PLA claiming that the appellate court misapplied the Illinois Post-Conviction Hearing Act by affirming the trial court's summary dismissal of the petition at the first stage based on waiver or a failure to show cause and prejudice, and the appellate court made inappropriate new factual determinations not on the record. The Illinois Supreme Court denied Smith's PLA on October 7, 2003.

On April 1, 2004, Smith filed an amended habeas corpus petition in the Northern District of Illinois. Upon

the state's answer to the petition, the district court appointed counsel for Smith. Smith's new counsel filed an amended petition on July 24, 2007, raising following claims:

(1) trial counsel was constitutionally ineffective for failing to (i) object to an improper jury instruction concerning how to weigh identification testimony of a witness; and (ii) interview and present at trial alibi witnesses;

(2) appellate counsel was constitutionally ineffective for not arguing on appeal that the trial court erred in denying petitioner's motion to strike Queen's in-court identification and his motion for a mistrial; and

(3) the State elicited testimony from Detective Duffin that led to the inference that petitioner's co-defendant implicated petitioner in the shooting, in violation of the Confrontation Clause.

On January 26, 2009, the district court denied the petition. The district court found all of Smith's claims procedurally defaulted either because they had not been raised and fairly presented through one complete round of state court review or because they had been denied based on an independent and adequate state law ground, or both. The district court went on to find that Smith could not avoid his defaults by showing cause and prejudice because to satisfy that burden he relied on his procedurally-defaulted claim that counsel was ineffective for not raising these claims. Finally, the district court found that Smith could not adequately demonstrate a claim of actual innocence.

On March 20, 2009, the district court granted Smith a Certificate of Appealability, certifying for review the three substantive issues raised in the amended petition and the procedural default of those issues.

## II. Discussion

We review the district court's denial of a habeas petition de novo. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of Supreme Court precedent," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362 (2000).

As a threshold matter, we must determine if Smith has procedurally defaulted on his three claims. Before a federal court can consider a petition for habeas corpus, a petitioner must satisfy several procedural requirements. If the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). A petitioner's failure

to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits. *O'Sullivan*, 526 U.S. at 848. Also, a federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. *United States ex. rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001). A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied. *Franklin v. Gilmore,* 188 F.3d 877, 882 (7th Cir. 1999). A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Under this cause-and-prejudice test, a cause is defined as, "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *People v. Britt-El*, 794 N.E.2d 204, 209 (Ill. 2002). Prejudice means, "an error which so infected the entire trial that the resulting conviction violates due process." *Id.*

We address each claim with regard to the district court's finding of procedural default. We then turn to the issue of whether we should set aside the procedural default due to a claim of actual innocence and miscarriage of justice.

## A. Claim One: Ineffective Assistance of Trial Counsel

Smith cites two errors by trial counsel to support his first ineffective-assistance-of-counsel claim. The district court found that they were both procedurally defaulted.

First, petitioner claims that trial counsel was ineffective because it failed to object to the use of Illinois Criminal Pattern Jury Instruction 3.15. Jury Instruction 3.15, as it was given to the jury, read:

> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to the following: [1] The opportunity the witness had to view the offender at the time of the offense; [or] [2] The witness's degree of attention at the time of the offense; [or] [3] The witness's earlier description of the offender; [or] [4] The level of certainty shown by the witness when confronting the defendant; [or] [5] The length of time between the offense and the identification confrontation.

Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992) (brackets in original). Several years after Smith's trial, in 2001, the Illinois Court of Appeals found that the use of the disjunctive between each factor in the jury instruction constituted plain error because it "implied, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability." *People v. Gonzalez*, 761 N.E.2d 198, 207 (Ill. Ct. App. 2001).

The district court found that it could not reach the merits of this issue because the state court denied this

claim on the basis of the independent state law ground of forfeiture. Smith does not argue that forfeiture is not an independent and adequate state ground. Rather, he argues that the state court did not rely solely on forfeiture. Smith relies on our statement in *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002):

> If the decision of the last state court to which the petitioner presented his federal claims fairly appears to rest primarily on the resolution of those claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims.

Smith argues that the state court interwove its forfeiture finding with a review of the merits. However, the state court's opinion does not support this argument. The state court briefly addresses the merits of this claim, but did so only in the context of the cause-and-prejudice analysis required to set aside forfeiture. The state court rested its dismissal of this issue on the fact that Smith did not raise it on direct appeal or in either of his post-conviction petitions. Smith did not raise this issue until his appeal from the denial of his successive post-conviction petition. The district court also found that this claim was procedurally defaulted because the petitioner did not raise it before the Illinois Supreme Court in his PLA, thus failing to raise this claim in a full round of appellate review. *See Boerckel*, 526 U.S. at 845-46.

Because this claim was procedurally defaulted, Smith must show cause for not raising this issue at the appro-

priate stage of appeal and prejudice from the alleged error. *See Coleman*, 501 U.S. at 750. To show cause, Smith argues that the ineffective assistance of his appellate counsel caused the default. Ineffective assistance of counsel can, at times, be sufficient to show cause. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1988). However, this does not explain why Smith did not raise this issue in his first petition for post-conviction relief, nor why he did not raise it in his PLA from the dismissal of his petition for post-conviction relief. To show prejudice, Smith points to the fact that this case was based primarily on the testimony of two eye witnesses who were both under the influence of drugs at the time of the incident, which makes this jury instruction particularly pertinent. However, it is not clear that giving this jury instruction in the conjunctive, rather than the disjunctive, would have had any impact on the jury's deliberation process. Notably, the prosecutor argued in closing the importance of multiple factors from the jury instruction being present in the identifications. Because Smith fails to show adequate cause and prejudice, this claim has been procedurally defaulted.

Finally, Smith would likely fail on the merits of this claim. To succeed on an ineffective assistance of counsel claim, petitioner must prove both that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) "there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The Illinois Court of Appeals has found that failure to tender proper jury instructions

can rise to the level of ineffective assistance of counsel. *See People v. Serrano*, 286 N.E.2d 1011 (Ill. Ct. App. 1997) (holding that counsel's failure to tender an instruction regarding compulsion as an affirmative defense rose to the level of ineffective assistance of counsel in a case where the defendant admitted to the murder but presented the affirmative defense of compulsion). However, failure to tender a jury instruction that is central to the defendant's theory of the case is different from a lawyer's failure to object to the use of an applicable pattern jury instruction. Pattern Jury Instruction 3.15 was codified in 1992 and remained in use until 2001. Defense counsel did not act in an objectively unreasonable manner by not objecting to the use of an applicable pattern jury instruction.

Smith next claims that his trial counsel was ineffective for failing to call Michael Williams, who would have testified that another individual was the shooter, and Mark Sims, who would have testified as an alibi witness. The district court found that it could not reach the merits of this issue because it was also procedurally defaulted. The state court found that Smith's claim regarding the failure to call Williams was forfeited because he did not raise it in his first petition for post-conviction relief. Smith contends that his trial counsel's failure to call Williams as a witness amounted to ineffective assistance of counsel because Williams's willingness to testify on Smith's behalf was known at the time of trial. However, this contention cuts directly against Smith's argument that he did not raise this earlier because Williams's testimony is newly discovered evidence. It is less clear

when Smith learned of Sims as a witness. Smith failed to ever name Sims as a newly discovered alibi witness in any state court filings. The state court, relying on the Illinois Post-Conviction Act, found that Smith forfeited his claim of a newly discovered alibi witness because he did not reference Sims by name and he did not attach an affidavit of Sims when raising this issue to the Illinois Court of Appeals. The state court considered the merits of the claim when determining whether Smith showed sufficient cause and prejudice to exempt him from forfeiture. Contrary to Smith's contention, the Illinois Appellate Court did not address the merits of the underlying claim as an alternative holding. In addition to procedural default due to forfeiture, the district court also found that this claim was procedurally defaulted because it was not raised to the Illinois Supreme Court in the PLA.

Because this claim is procedurally defaulted, we must again consider whether Smith can assert cause and prejudice to justify setting aside the procedural default. Smith cannot. Smith argues that his trial counsel provided ineffective assistance of counsel by neglecting to call these witnesses, and that this flaw justifies Smith's own failure to include these claims in his post-conviction petition or his PLA. However, Smith filed his own post-conviction petition and PLA. Therefore, this argument relies on his *pro se* status to show cause for not raising this issue at the appropriate time. This court has specifically rejected the argument that a petitioner's *pro se* status alone constitutes cause in a cause-and-prejudice analysis. *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir.

2003); *Barksdale v. Lane*, 957 F.2d 379, 385-86 (7th Cir. 1992). Without a showing of cause this claim is procedurally defaulted.

Furthermore, if we reached the merits of this issue, Smith would likely fail on this claim. As stated above, to succeed on an ineffective assistance of counsel claim, petitioner must prove both that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) "there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688. Smith compares this case to *Raygoza v. Hulick*, 474 F.3d 958 (7th Cir. 2007), to support his argument that his counsel was ineffective. In *Raygoza*, we found that an attorney's failure to investigate a defendant's alibi did constitute ineffective assistance of counsel. However, in *Raygoza*, unlike in this case, petitioner showed that an investigation of alibi witnesses would have turned up numerous witnesses, some related and some not related to the defendant, who all would have told a consistent story about where the defendant was the entire night of the crime. 474 F.3d at 964. In this case, an investigation would have only turned up one alibi witness who claims to have seen Smith studying at some time around 11 p.m. on the night of April 6, 1992. Unlike in *Raygoza*, where the failure to present the group of witnesses likely did effect the outcome of the case, the failure to present Sims's testimony likely had no effect on the outcome given the other evidence presented.

**B.  Claim 2: Ineffective Assistance of Appellate Counsel**

Smith next argues that his appellate counsel was ineffective for failing to raise the issues surrounding Queen's identification of Smith. Smith claims that Queen's identification was unduly suggestive and therefore unreliable. Queen had never identified Smith prior to the trial. The first time Queen identified Smith as the shooter was during the state's direct examination of him. When Queen made the identification, Smith was the only black male at the defense table. Although Smith objected to the identification at trial as unduly suggestive, he did not raise this issue again until his appeal from his successive post-conviction petition. The district court found this issue to be procedurally defaulted because the state court based its ruling to dismiss the claim in the post-conviction petition on independent state law grounds. In adjudicating this issue the state court did not specifically use the word "forfeiture," but rather jumped immediately to a cause-and-prejudice analysis. The district court correctly read this analysis as a forfeiture analysis, despite the fact that the state court did not use the specific word forfeiture.

Because the claim is procedurally defaulted, we must consider whether Smith adequately points to cause and prejudice to warrant a waiver of the procedural default. Smith does not sufficiently show cause for why he did not raise this issue in his post-conviction petitions. He relies on the ineffective assistance of appellate counsel to justify not raising this issue at the post-conviction phase. However, appellate counsel's shortcomings offer no explanation for why he did not raise this issue

in his initial *pro se* post-conviction petition when he was no longer represented by appellate counsel.

Furthermore, on the merits this claim would also likely fail. To succeed on an ineffective assistance of appellate counsel claim, petitioner must show that "appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). On appeal, appellate counsel addressed the issues of potentially improper statements by the prosecutor, Detective Duffin's testimony about his conversation with Edwards, and the nature of Smith's sentence. It is not clear that the issue of Queen's identification was stronger than these issues. In addressing claims of unreliable identifications, we have repeatedly held that "a defendant's mere presence at the defense table is not enough to establish a violation of due process." *United States v. Recendiz*, 557 F.3d 511, 525 (7th Cir. 2009). Smith raises several arguments that would be appropriate to make to a jury about why this identification was unreliable. However, Smith does not point to any cases where a trial court had to exclude a similar identification as unduly suggestive. It is likely that appellate counsel found this dearth of caselaw instructive in deciding not to raise this issue. This decision by counsel does not amount to ineffective assistance of appellate counsel.

## C. Claim 3: Confrontation Clause Issue

Lastly, Smith claims that his Sixth Amendment Confrontation Clause rights were violated when the state

elicited testimony from Detective Duffin which led to the inference that Edwards, who did not testify at trial, had implicated Smith in the shooting. Smith first raised this issue on direct appeal. The state appellate court held that Smith forfeited this claim by failing to object at trial or raise this issue in a post-trial motion. Smith did not object during Detective Duffin's testimony and only objected to one statement during the state's closing argument when the prosecutor attempted to explicitly draw the inference for the jury that Edwards implicated Smith in the crime. The trial court sustained the one objection Smith made. With regard to the one statement objected to, the appellate court found no error because the objection was sustained and the prosecutor did not complete the offending argument. After finding the claim forfeited, the state appellate court did discuss the merits and found that the statement was not hearsay, but rather admissible testimony listing the investigative steps taken by Detective Duffin. Smith again argues that the presence of any discussion of the merits indicates that the state court did not base its ruling on independent state law grounds. However, that is not the law. Only when the state court's analysis of state law and federal law grounds are interwoven, to such an extent that we cannot clearly determine whether the state court opinion relies on state law grounds, do we set aside the state law grounds and address the issue. However, in this case, the state court held that the issue was procedurally defaulted. Then, in dicta, the court chose to address the validity of the claim. The dicta does not change the state court's holding, which was solidly grounded in state law.

Because the Sixth Amendment issue has been procedurally defaulted, we must consider whether Smith shows cause and prejudice to warrant setting aside the forfeiture. Smith relies on the ineffective assistance of his trial counsel to show cause. However, Smith notably does not raise this failure of trial counsel in his ineffective assistance of trial counsel claim asserted above. This bare assertion that trial counsel's failure to object and to include this issue in the post-trial motion constitute cause would eviscerate the notion of forfeiture: a failure to raise an issue would constitute cause to justify not raising the issue. Smith cannot show cause.

Further, this claim would likely fail on its merits under AEDPA standards. Smith relies primarily on *Crawford v. Washington*, 541 U.S. 36 (2004), to support his argument that the trial court violated his Confrontation Clause rights. However, *Crawford* came down nine years after Smith's trial. The holding of *Crawford* cannot be considered settled Supreme Court precedent for the purposes of habeas corpus if the Supreme Court had not yet decided the case. At oral argument, Smith backed away from *Crawford* and relied on *Ohio v. Roberts*, 448 U.S. 56 (1980). However, *Ohio v. Roberts* draws a much fuzzier line around the Confrontation Clause issue than *Crawford* does. Unlike *Crawford*, which draws a clear line that testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the absent witness, 541 U.S. at 59, *Ohio v. Roberts* held that a statement of an unavailable witness is admissible when, "it bears adequate 'indicia of reliabil-

ity,'" 448 U.S. at 66. The Court clarified the term "indicia of reliability" by stating, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.* Under the standard of *Roberts*, it is unclear that Detective Duffin's testimony about his conversations with Edwards was impermissible.

It is also unclear whether Detective Duffin's statements were hearsay at all. Courts throughout the country, including this court, have repeatedly recognized that statements offered to explain an officer's course of conduct are not hearsay statements because they are not offered for the truth of the matter asserted. *E.g, United States v. Breland*, 356 F.3d 787 (7th Cir. 2004). This statement walks that line. The testimony of Detective Duffin alone would likely not be hearsay because there was no specific statement referenced. The prosecutor's closing argument pushed the boundary of hearsay by explicitly arguing that the jury should draw the inference that Edwards told Detective Duffin that Smith was the shooter. However, determining when the line has been crossed, such that an officer's testimony about his course of conduct becomes hearsay, is a somewhat murky area of the law. Therefore, we cannot say that the decision to allow this testimony and the statements of the prosecutor was a clearly erroneous application of settled Supreme Court precedent at the time of Smith's trial as we would be required to find to grant habeas.

**D. Miscarriage of Justice and Actual Innocence**

Finally, Smith attempts to avoid all of the procedural bars to this petition by arguing that he has put forth new evidence of his actual innocence and therefore to deny the petition would result in a miscarriage of justice. This is a high bar for Smith to meet. The fundamental miscarriage of justice exception requires "the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delco*, 513 U.S. 298, 327 (1995).

To support his actual innocence claim, Smith relies on the affidavits of Mark Sims, who would have testified that he saw Smith at home studying on the night in question, and Michael Williams, who would have testified that he saw the shooting and Smith was not the shooter. In light of our precedent in *Hayes v. Battaglia*, 403 F.3d 935 (7th Cir. 2005), the affidavits of these two witnesses do not warrant the application of the miscarriage of justice exception. In *Hayes*, the petitioner put forth affidavits of six alibi witnesses not called at trial. We held that this was not sufficient new evidence to show actual innocence because the government put on six witnesses claiming the petitioner committed the crime. We found that a six-verus-six split between exculpatory and inculpatory witnesses meant that the defendant did not meet the high threshold for an actual innocence claim. *Hayes*, 403 F.3d at 937. Smith has put forth the statements of

two witnesses not called at trial, one of whom Smith apparently knew about since 1992. This does not sufficiently counter the state's two eye witness identifications and the evidence of Smith's self-inculpating statement to Detective Duffin and State's Attorney Sullivan.

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of the habeas corpus petition.